# Richmond.

## B. F. Troutner v. Commonwealth.

### January 18, 1923.

1. Intoxicating Liquors—*Jury—Jury Smelling and Tasting Liquor in Presence of Court.*—It is proper, where ardent spirits are introduced in evidence, to permit the jurors to smell them, and, if desired for the purpose of assisting them in passing upon the evidence, with the approval of the court, to taste them *in the presence of the court.*

2. Jury—*Right to Use of their Senses.*—In passing upon questions of fact, jurors have the right to use all their senses, or such of them as may be helpful in reaching a proper conclusion.

3. Jury—*What Jury May Carry to Jury Room—Discretion of Court.*—In the absence of specific statutory direction, it is generally left to the sound discretion of the court to say what the jury will be permitted to carry to their room on retiring to consider of their verdict. That discretion, except when abused, will not be disturbed by the appellate court.

4. Jury—*Purpose of Retirement—What Jury May Take Into Jury Room—Taking Evidence Out of Presence of Accused.*—The purpose of the retirement is to enable the jurors to confer and deliberate upon the evidence and their recollections and impressions thereof. For like reasons it is proper, when an object or thing is introduced in evidence, except where its inherent qualities make it improper, to permit the same to be taken to the jury room, where the jurors may examine and discuss it and thereby test the facts shown in evidence. In neither case can it be said that the jurors are taking evidence out of the presence of the accused, or giving evidence without being sworn.

5. Intoxicating Liquors—*Jury—Taking Intoxicating Liquors Into Jury Room—Case at Bar.*—On account of their intoxicating qualities, and the danger of members of the jury abusing the privilege, while in their retirement, intoxicating liquors should be excluded from the jury room. And in the instant case it was reversible error for the court to allow corn whiskey in two bottles, found ten or twenty feet from the house of accused, buried in the ground, to be taken to the jury room with instructions from the Commonwealth's attorney to the jury to smell and taste it, and compare its smell and taste with that of whiskey found in the house of accused, and ascertain if it were all the same run of liquor from the same still.

6. CRIMINAL LAW—*Character in Evidence—Reasonable Doubt.*—Evidence of the good character of the accused should always be considered by the jury in determining his guilt. If, notwithstanding such evidence, they are satisfied beyond a reasonable doubt that the defendant is guilty, they should convict, but if such evidence is believed by them as a substantive fact, which disproves the charge by discrediting the witnesses upon whose testimony it rests, or raises in their minds a reasonable doubt of his guilt, they should, notwithstanding the other evidence, acquit.

7. CRIMINAL LAW—*Character in Evidence—Reasonable Doubt—Instructions—Case at Bar.*—In a prosecution for violation of the prohibition act, it was assigned as error that the court struck out from the following instruction the words italicized: "The court instructs the jury that they should consider the character evidence for the defendant, *and evidence of good character may itself make a reasonable doubt.*"

    *Held:* No error, since evidence of good character is not always believed by the jury and does not always raise a reasonable doubt of guilt. Therefore, the instruction, in the form in which it was offered, was calculated to mislead the jury.

8. INTOXICATING LIQUORS—*Evidence Insufficient to Support Verdict of Having Liquor in Possession for Sale—Liquor not Found on the Premises of Accused—Case at Bar.*—In the instant case officers searched the house of accused and found two one-pint bottles of corn liquor, admittedly belonging to accused. Outside of the house, ten or twenty feet therefrom, they found two one-gallon bottles of corn liquor, buried in the ground outside the boundary line of accused's premises. Accused testified, without contradiction, that he did not own the liquor found buried in the ground, and was in no way engaged in the liquor business. Accused had the right, under section 65 of the prohibition act (Laws 1918, chapter 388), to have the two one-pint bottles of liquor in his home.

    *Held:* That as the two one-gallon bottles of liquor were not found within the curtilage of accused, nor within the boundaries of his lease, their finding was not *prima facie* proof of his guilt; and besides, there was no evidence showing that these bottles of liquor were ever in his actual possession, or that he had any knowledge of them.

Error to a judgment of the Circuit Court of Norfolk county.

*Reversed.*

The opinion states the case.

*Jas. G. Martin,* for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

West, J., delivered the opinion of the court.

B. F. Troutner, the accused, was convicted of having in his possession, for sale, more than one gallon of ardent spirits, and sentenced to one month's confinement in jail and to pay a fine of $50.00. He assigns error.

In May, 1921, officers searched the rented house in which the accused and his family lived and found two one-pint bottles of corn liquor, which it is admitted belonged to the accused. Outside of the house, ten or twenty feet from the northwest corner thereof, they found two one-gallon bottles of corn liquor, buried in the ground. The accused had been living in the house only three months and testified, without contradiction, that he did not own the liquor found outside of the house, or know where it came from, or who put it there, and was in no way engaged in the liquor business. The accused produced his lease, which was filed in evidence, and testified further, without contradiction, that the boundary line of the property he leased was nearer to the house than where the two large bottles of liquor were found. The four bottles of liquor were made a part of the evidence in the case.

The first assignment of error is that the court, at the request of the Commonwealth's attorney, allowed the jury to take the four bottles of whiskey to their room, with instructions from the Commonwealth's attorney to smell and taste it, and to compare their smell and taste and see if they were all the same run of liquor from the same still.

[1, 2] The question raised by this assignment is of

first impression in this State. The authorities in other jurisdictions are somewhat in conflict as to the propriety of permitting jurors to taste of liquor in prosecutions for violations of the liquor laws, but according to the better rule, it is proper, where ardent spirits are introduced in evidence, to permit the jurors to smell them, and if desired for the purpose of assisting them in passing upon the evidence, with the approval of the court, to taste them *in the presence of the court.* In passing upon questions of fact, jurors have the right to use all their senses, or such of them as may be helpful in reaching a proper conclusion.

In *Reed* v. *Territory*, 1 Okl. Cr. 481, 98 Pac. 583, 129 Am. St. Rep. 861, the court said:

"Both upon reason and authority, we submit that there are three channels through which tribunals of fact receive evidence, namely: Inspection, documents and oral testimony. No jury ever decided any controverted question of fact without using one or more of their five senses  *  *  *  . In this case, the jurors were permitted to smell the contents of the bottle offered in evidence, to enable them to decide as to whether the prosecuting witness had told the truth about it being whiskey. By this, the jurors did not learn any facts independent of the evidence; they simply tested the facts in evidence by the use of one of their senses. Or, in other words, they were permitted to hold an autopsy on a part of the evidence already before them, to test its true character.  *  *  *  If the jury can exercise the power of inspection through the sense of sight, why should they not exercise the power of inspection through any or all of their other senses? We hold that they have this power as to all objects and things introduced in evidence before them, subject to the discretion and control of the trial court,

48

a proper understanding of which depends upon the common experience of men."

In *People* v. *Kinney*, 124 Mich. 486, 83 N. W. 147, it was held not to be error to allow jurors to taste whiskey which had been introduced in evidence on the trial.

In *Schulenberg* v. *State*, 79 Neb. 65, 112 N. W. 304, 16 Ann. Cas. 217, it was held, under a prosecution for unlawfully keeping intoxicating liquor for sale without a license, not error to permit the jury to taste the liquor seized and produced in evidence, for the purpose of determining whether or not it was intoxicating.

[3] In the absence of specific statutory direction, it is generally left to the sound discretion of the court to say what the jury will be permitted to carry to their room on retiring to consider of their verdict. That discretion, except when abused, will not be disturbed by this court.

In the case of *Taylor* v. *Commonwealth*, 90 Va. 117, 17 S. E. 812, the prisoner's gun and four cartridge hulls fired from that gun during the trial were introduced in evidence by the prisoner to show that they were struck by the plunger *in his gun* differently from the two cartridge hulls which the prosecution had put in evidence, which had been picked up on the scene of the killing. The gun was given to the jury in their room, but they were not told to look at, examine or consider it, but they took the gun apart and examined the plunger and saw that the gun had been recently tampered with and fixed so as to strike and explode the cartridges differently from those which had been used by the murderers. It was held that this was not error, but see reference to the *Taylor Case* in *Noell's Case, ante* p. 600, 115 S. E. 679, decided today.

The purpose of the retirement is to enable the jurors to confer and deliberate upon the evidence and their recollections and impressions thereof. For like reasons

TROUTNER v. COMMONWEALTH, 135 VA. 750. 755

it is proper when an object or thing is introduced in evidence, except where its inherent qualities make it improper, to permit the same to be taken to the jury room, where the jurors may examine and discuss it and thereby test the facts shown in evidence. In neither case can it be said that the jurors are taking evidence out of the presence of the accused, or giving evidence without being sworn.

[5] On account of their intoxicating qualities, and the danger of members of the jury abusing the privilege, while in their retirement, intoxicating liquors should be excluded from the jury room. And it was reversible error for the court to allow the corn whiskey in the four bottles to be taken to the jury room with instructions from the Commonwealth's attorney to the jury to smell and taste it, and compare its smell and taste, and ascertain if it were all the same run of liquor from the same still.

In the case of *Wadsworth* v. *Dunnam*, 117 Ala. 661, 668, 23 So. 699, p. 702, the Alabama court said:

"The proposal that the jury on their retirement should take with them bottles of the kind of cordial sold defendant by the plaintiffs, 'to be smelled or drank or tasted,' as the jury or any number of them chose, was properly overruled. The purpose was that the jurors, if indulging the opportunity afforded them, from personal experience, should determine the controverted fact whether the cordial was intoxicating. Laying aside all other objections, it is enough to say if the cordial was intoxicating, as insisted by the defendant, it was the duty of the court to prohibit, not to license, its introduction into the jury room."

The next assignment of error relates to the action of the court in striking out the words underscored in the following instruction:

"The court instructs the jury that they should consider the character evidence for the defendant, *and evi-*

*dence of good character may itself make a reasonable doubt."*

[6, 7] Evidence of the good character of the accused should always be considered by the jury in determining his guilt. If, notwithstanding such evidence, they are satisfied beyond a reasonable doubt that the defendant is guilty, they should convict, but if such evidence is believed by them as a substantive fact, which disproves the charge by discrediting the witnesses upon whose testimony it rests, or raises in their minds a reasonable doubt of his guilt, they should, notwithstanding the other evidence, acquit. Since evidence of good character is not always believed by the jury and does not always raise a reasonable doubt of the guilt of the defendant, the instruction, in the form in which it was offered, was calculated to mislead the jury, and we find no error in the action of the court in altering the same.

[8] The remaining assignment is that the court erred in not setting aside the verdict as contrary to the law and the evidence, and as not supported by the evidence. The accused had the right under section 65 of the prohibition act (Laws 1918, c. 388) to have the two small bottles of liquor in his home. The two large bottles were not found within his curtilage or enclosure, nor within the boundaries of his lease, and their finding was not, therefore, *prima facie* proof of guilt under section 28 of said act. Besides, there is no evidence showing that the same were ever in his actual possession or that he had any knowledge that they were buried in the ground so near his premises.

For the foregoing reasons, we are of opinion that the verdict of the jury is without evidence to support it and the judgment complained of erroneous. The judgment will be reversed and the case remanded for a new trial, if the Commonwealth shall be so advised.

*Reversed.*