12794

STATE v. BURCKHALTER

(151 S. E., 64)

*Mr. John E. Stansfield,* for appellant,

*Solicitor D..D. Carter,* for respondent,

January 2, 1930.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

In May, 1927, the defendant Burckhalter was convicted of having in his possession contraband liquors and was sentenced to six months on the public works of Aiken County. He appeals to this Court upon exceptions imputing error to the trial Judge in the admission of testimony; in refusing to

direct a verdict; in charging the jury; in allowing the jury to take into their room and drink the commodity offered in evidence; and in refusing to grant a new trial:

When A. D. Shepard, a witness for the State, was on the stand, he was asked by the Solicitor whether the liquor found at the defendant's home, what is known as "homebrew," was intoxicating. He answered that he had never drunk it, but had heard others say so. Thereupon appellant's counsel said, "We object to that." No ground of objection was stated, and the trial Judge made no ruling. The exception to this testimony, therefore, will not be considered. *State v. Rucker,* 86 S. C., 66, 68 S. E., 133; *State v. Davis,* 121 S. C., 350, 113 S. E., 491; *Gowns v. Watts Mill,* 135 S. C., 163, 133 S. E., 550; *White v. Southern Railway Company,* 142 S. C., 284, 140 S. E., 560, 57 A. L. R., 634.

The defendant objected to testimony of the State's witness, Sheriff Nollie Robinson, to the effect that the homebrew in question was intoxicating, on the grounds that the testimony was hearsay, and that there was no evidence that the particular commodity involved would cause drunkenness. We do not consider it necessary to reproduce the testimony. An examination of it shows that the objections are not well founded. The sheriff very clearly spoke from his own knowledge as to the intoxicating qualities of "homebrew," and there is nothing in the record to indicate that, as contended by appellant, he was testifying about the intoxicating qualities of "regular beer."

The defendant also bases an exception upon the fact that the trial Judge asked Sheriff Robinson the question: "Have you ever seen any stuff exactly like that (meaning the liquor in evidence)?" This exception cannot be sustained, as the Court was merely seeking to elicit the truth of the issue. *State v. Mitchum,* 150 S. C., 341, 138 S E., 184.

In the course of his charge the trial Judge, after reading Sections 820 and 878 of the Criminal Code, told the jury:

"It is not absolutely necessary to have a chemist come here and testify that he has made an analysis, and that it has more than one per cent. of alcohol in it.     *     *     *

"You can take this stuff in the room, and I would like for you to do that, and determine if you can whether or not if it is drunk in large quantities it will produce intoxication. If it contains over one per cent. of alcohol, and if drunk to excess will produce intoxication, then the State has made out a case, and your verdict will have to be guilty.     *     *     *

"The State does not want to charge any man with having in possession or manufacturing alcoholic liquors when he has not done it. The State does not want to convict any man for making a harmless cold drink, but if he is manufacturing something that has alcohol in it, and people drink it to excess and get drunk on it, the State says that is against the law, and he cannot do it, and it makes no difference what you might call the mixture."

Objections are made to this language on the ground that it was argumentative, was a charge on the facts, was an intimation that the case of the State was meritorious, and tended to deprive the jury of its discretion in finding a verdict. These objections cannot be sustained. The Court's charge, taken as a whole, without question, left entirely to the jury the decision of all the facts necessary to establish defendant's guilt.

The objection most seriously urged is that "it was error for his Honor to allow the jurors to take into the jury room and drink the commodity offered in evidence," it being strenuously contended that thereby the Court allowed the jury, in the absence of the defendant and the presiding Judge, to make witnesses of themselves in the jury room, thus disqualifying themselves as jurors, to introduce and create evidence by demonstration out of Court, and

to supply in this way a defect in the State's testimony as to whether or not the article in question was alchollc or intoxicating.

In the first place the record does not show that the jury drank all or any part of the homebrew. It only shows that they took with them into the jury room an opener and the liquor introduced in evidence by the State. Statements made in the exception and argument to the effect that the trial Judge instructed the jury to drink the commodity, or that they drank it, are entirely gratuitous and will not be considered. The trial Judge allowed the jury to take the liquor into their room and stated that they can "smell it or taste it, or do whatever they like about that." There was no compulsion even as to the smelling or tasting. The only question, therefore, is whether there was error in allowing the jury to take the liquor into their room, and to smell it or taste it, if they so desired.

The authorities are not in accord on this question. The appellant cites certain cases in support of his position, but we do not think their argument sound. We are much more impressed by the reasoning in other cases in which a contrary conclusion is expressed; they so clearly and so convincingly meet the objections raised by the appellant that we prefer to quote from some of them at length rather than attempt an original expression of practically the same views.

In *People v. Kinney,* 124 Mich., 486, 83 N. W., 147, the Court said: "It [the liquor] was received in evidence, and the Court then said: 'There is a tumbler, gentlemen, if you want to taste of it—any of you.' Respondent's counsel objected to these remarks of the Court, instructing the jury that they might taste it. The argument of respondent's counsel here is that if the jury, by tasting it, smelling, or drinking it, as they were ordered by the Court, thereby acquired knowledge or formed opinions of its properties, as to whether it was hard or fermented cider, those tasting or smelling it could not give evidence to their fellow jurors

without being sworn. There is nothing in the record show-ing or tending to show that any of the jurors smelled or drank of it, nor is there any evidence that the bottle was placed in their hands for examination. The record is en-tirely silent upon that subject; but, even if it had been handed them and they had tasted it, we think it would not have been error."

In *Schulenberg v. State,* 79 Neb., 65, 112 N. W., 304, 16 Ann. Cas., 217, the Court, after adverting to *State v. Lind-grove,* 1 Kan. App., 51, 41 P., 688, 689, in which it was held to be error to permit jurors to taste liquor produced in evi-dence, said: "The reasoning seems to be that the jurors thus obtained private grounds of belief, and that, after tasting of the liquor, they were properly witnesses in the case and dis-qualified as jurors. We are unable to concur in that reason-ing. If a belief founded on the evidence during the progress of a trial can be held to be a private ground of information, then it may be so held because of a belief founded on any class of evidence. In *Commonwealth v. Brelsford,* 36 N. E., 677, 161 Mass., 61, it is said: 'There are grave reasons against giving liquor to a jury to drink for the purpose of determining whether or not it is intoxicating.' We entirely agree with the sentiment there expressed where such course is taken by direction of the Court, express or implied. The tasting should not be compulsory. A case in point is that of *People v. Kinney,* 83 N. W., 147, 124 Mich., 486, where it was held not to be error to permit the jury to taste of liquor where the question was whether it was intoxicating. No reason is given to sustain the rule, but we think it supported both by reason and common sense. In the determination of a disputed question of fact, there is called in requisition per-haps all the senses of jurors, which they are permitted to freely use, and where, in prosecutions of this character, liquor is produced in evidence, the jury should be permitted to determine in their own way, and by the exercise of such

of their senses as they chose to employ, whether it is intoxicating or not."

In *Weinandt v. State,* 80 Neb., 161, 113 N. W., 1040, 1041, it is said: "While the Court would have no authority to direct or compel the jury to taste or sample the liquors, it was not error to permit them to taste thereof if they so chose."

The case of *Union v. State,* 7 Ga. App., 27, 66 S. E., 24, 26, is strikingly similar to the case at bar. The Court there said:

"Another ground of the motion for new trial complained that the judge permitted the jury to take with them to the jury room the jug which the witness had testified contained whiskey, the tomato can, and the broken glass. It is insisted that this was error, because it afforded the jury, if the jug contained intoxicants, the opportunity of first imbibing, and then, under the influence of the whiskey, proceeding to find a verdict. * * * It is not to be presumed that a jury, seeking to conduct themselves properly, and actuated only by a desire to ascertain the truth, will become intoxicated simply because they might have the opportunity in investigating the evidence in the case. Nor does it appear in the present case that such was the result. The next reason advanced why the jug, with its contents, should not have been submitted to the jury, is that the defendant has the right to be confronted by the witness testifying against him, and any act of the Court tending to abridge that right is reversible error. A complaint is made that the jurors were not sworn as witnesses, and that, in examining the jug and its contents, they would take into consideration their private knowledge. As we stated before, no showing is made that any of the jurors tasted the contents of the jug. But, conceding that some of the jurors had tasted the contents, if the jug did not contain whiskey, it would have afforded the defendant his surest defense. This would have been a demonstration of his innocence.

"We thoroughly agree with counsel for plaintiff in error in the proposition that a juror is not permitted to take into consideration his private knowledge of facts in reaching a verdict and that no testimony can be introduced as against a defendant, except in a public trial. But, even if one or more of the jurors, in the consideration of the case after they retired, tasted the liquid, and thus ascertained that it was or was not whiskey, we do not see that the case would have been different from his looking at the wine glass and determining from the peculiarity of its fracture (which had been testified to) that it was a glass. Each is alike a case of identity by one of the five senses. In the identification of the glass, it would be by that of sight. The identification of the contents of the jug would be by that of taste, or it might be that of smell. There was testimony that that was the identical glass used in the sales. There was testimony tending to the conclusion that that was the identical jug, with the same contents, as when taken from the defendant's house. Nothing is better settled than that any article identified as coming from one's possession or found in his dwelling may be put in evidence upon his trial for crime to illustrate the nature of his possession of the use to which it had been subjected.

"There is scarcely a trial for murder, in which the life of the prisoner is at stake, that the weapons or clothing of the defendant are not introduced. In some cases such evidence may be more valuable to the defendant than to the prosecution. The evidence identifying the articles to which objection is made was sufficient at least to authorize the Court to submit the jug and its contents to the jury, for them to determine by their own senses whether the oral testimony of the witness upon this point was true or false. The view which a certain juror might take of such physical testimony in discussing it with his fellows cannot affect its admissibility, and is not to be considered as testimony delivered beyond the hearing of the defendant on trial. If that were true, the defendant would be entitled to rebut the impression which

the juror received from his sense of sight, or to prevent him from communicating it to his fellow jurors, unless he was first sworn as a witness. And so, in a case of homicide, the juror, who might be of the opinion that a stain upon the defendant's knife, or his clothing, taken with them to the jury room, was blood, judging by his sight, would not only be prohibited from expressing that opinion, but his fellow jurors, not being permitted to have either the knife or the clothing with them in the jury room, would have no opportunity of viewing these mute witnesses with their fellow juror and of satisfying the entire panel by investigation whether the stains were in fact blood or not blood. As measured by the rule laid down in *Drake v. State,* 75 Ga., 413, there was no error in allowing the jury to take with them to the jury room the jug and its contents. It was not necessary in this case for the jury to have tasted or smelled the contents of the jug. There was testimony that it contained whisky. The defendant did not deny this, although he did deny ever having sold any of the whiskey. There is no evidence that the jury did in fact use their personal senses to test the comparative strength or weight of the testimony. But, as we have said before, there are some cases where the evidence is in part derived from physical objects, in which cases the jury must wholly by sense of sight determine what is proved.

"This rule has been recognized from time immemorial; and if the juror may ascertain and determine by sight (as in comparison of handwriting, in cases of forgery) facts which are vital to the guilt or innocence of the accused, why may he not even though not sworn as a witness, ascertain by smell or taste whether a liquor coming from the possession of a defendant is or is not an intoxicating beverage? If there be objections to this practice, it could at least be said to be a step toward a return to our first jury trial, when the witnesses themselves were the jurors. If in any case there is a perversion of the privilege thus accorded the jury of in-

specting the physical evidence in the case. which is injurious to the defendant on trial, and injury is shown, a new trial should be granted. In this case, neither error nor injury appears."

While the wisdom of allowing the jury to take into their room and taste or smell an article offered in evidence and alleged to be contraband liquor may not always be apparent, still such course is not a transgression of any rule of evidence or procedure.

The grounds of the motions for a directed verdict and for a new trial have already been considered. There was no error in refusing these motions.

All exceptions are overruled, and the judgment of the Circuit Court is affirmed.

Mr. Chief Justice Watts and Messrs. Justices Cothran, Blease and Carter, concur.